IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ZACKERY HUNT,

      Plaintiff,   No. CIV S-06-0141 MCE GGH P

  vs.

R. RODRIGUEZ, et al.,   <u>ORDER &</u>

      Defendants   <u>FINDINGS AND RECOMMENDATIONS</u>

                           /

<u>Introduction</u>

        Plaintiff, apparently an intermittent state prisoner, county inmate or parolee[1] proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is 1)

---

[1] Plaintiff's filed notices of change of address have been numerous. On December 26, 2006, and on January 9, 2007, the notices indicated that he had been paroled; subsequently, he filed on September 26, 2007, and October 16, 2007, change of address notices indicating that he was again incarcerated. As of February 1, 2008, he indicated that he had again been paroled. On July 16, 2008, plaintiff's notice of change of address indicated that he was then located at the Santa Rita Jail Facility. On August 28, 2008, plaintiff filed a notice of change of address indicating his incarceration at San Quentin State Prison. On October 9, 2008, plaintiff's change of address indicated he was once again paroled; however, later change of address notices, filed on November 3, 2008, showed that he was an inmate of Santa Rita Jail, and, on January 5, 2009, indicated his incarceration at Deuel Vocational Institution. A Feb. 22, 2009, notice showed plaintiff to be housed at California State Prison (CSP)-Sacramento. Thereafter, on May 8, 2009, plaintiff's change of address indicated a private address, or parole, for plaintiff, followed, on May 21, 2009, by yet another change of address notice showing plaintiff was once again housed at the Santa Rita County Jail, and most recently, an August 12, 2009, notice indicating that plaintiff is currently housed at San Quentin State Prison.

defendant's motion for summary judgment, filed on February 24, 2009 (dkt # 67), to which plaintiff filed his opposition on April 15, 2009 (dkt # 80 and # 81), after which defendant filed a reply on April 23, 2009 (dkt # 85); 2) plaintiff's April 15, 2009 (dkt #79), request for a continuance and request (dkt # 82) for the court to order defendant to comply with the court's order, filed on January 26, 2009, to which defendant filed her opposition on April 23, 2009 (dkt # 84 and also at dkt # 85[2]); 3) plaintiff's April 21, 2009 (dkt # 83), motion for a continuance and motion to compel in response to the court's order, filed on April 8, 2009, granting plaintiff a thirty-day extension of time either to file an opposition to the motion for summary judgment filed by defendant or to make the request showing for a continuance pursuant to Fed. R. Civ. P. 56(f), and plaintiff's May 1, 2009 (dkt # 86), motion again seeking a continuance, to which defendant filed an opposition on May 7, 2009 (dkt # 87).

By way of providing context to the current posture of the case, the court notes that the summary judgment motion is now pending because the undersigned vacated defendant's prior motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), because defendant's efforts within that motion to obtain judicial notice of public documents containing disputed facts and not actually judicially noticeable on a motion to dismiss, would have transmuted it impermissibly into one brought pursuant to Fed. R. Civ. P. 56. See Order, filed on Jan. 26, 2009; Lee v. City of Los Angeles, 250 F.3d 668, 689-690 (9th Cir. 2001). The court directed defendant therein to file a summary judgment motion within thirty days. Defendant filed the dispositive motion timely, pursuant to the order; defendant's answer was filed on Feb. 25, 2009 (dkt # 68).

\\\\\

\\\\\

\\\\\

\\\\\

---

[2] Defendant's filing at dkt # 85 is entitled as serving alternatively as a reply in support of her summary judgment motion or as a response to plaintiff's filings at dkt # 80, # 81 and # 82.

Second Amended Complaint

As the court has previously set forth, by Order, filed on Jan. 26, 2009 (dkt # 64) (p. 2), on April 21, 2008, plaintiff filed a second amended complaint,[3] naming as the sole defendant Parole Agent R. Rodriguez of the San Jose Region II office. Second Amended Complaint (SAC), pp. 2-3. Defendant Rodriguez is plaintiff's parole agent, responsible for supervising plaintiff's parole and for discharging plaintiff from parole. Id., at 3. Although plaintiff had been discharged from parole as of April 17, 2005, for which plaintiff had signed a CDC 1515 form (a copy of which plaintiff does not attach to his complaint), defendant Rodriguez placed a parole hold on plaintiff on July 12, 2006, and thereafter charged plaintiff with "approx[imately]" two parole violations. Id., at 3-4. Defendant Rodriguez was deprived of his liberty for eight months, was exposed to prison riots, was unable to work, and deprived of his family's support due to the actions of defendant Rodriguez. [Id., at 4]. Plaintiff seeks money damages and declaratory relief in the form of a declaration that plaintiff's parole discharge date was April 17, 2005. Id., at 3.

Motions/Requests for a Continuance

The basis for federal jurisdiction in this case, as construed by this court, is that plaintiff alleges a violation of a substantive due process right. Plaintiff has filed various requests for a continuance, primarily on the basis that he needs access to further discovery in the form of a putative "contract" yet to be produced by defendant.

Fed. R. Civ. P. 56(f) provides,

> If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> 1) deny the motion;
> 2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> 3) issue any other just order.

---

[3] In the Jan. 26, 2009, Order, the court deemed the second amended complaint timely filed.

Fed. R. Civ. P. 56(f).

Although the posture of this case is such that defendant's dispositive motion has come on prior to the issuance of a scheduling order,[4] setting forth, inter alia, a discovery deadline, defendant avers that she has responded to all of plaintiff's discovery requests. Indeed, plaintiff himself indicates that he had received defendant's discovery responses as of April 13, 2009. See plaintiff's motion for continuance & motion to compel, filed on April 21, 2009 (dkt # 83). Plaintiff in his filings apparently continues to seek a copy of his CDC 1515 parole agreement for a period of three years, as well as all Board of Parole Hearing (BPH) decisions and conclusions related to discharge reviews. See plaintiff's motions, filed on April 15, 2009 (dkt # 79, # 82), and on May 1, 2009 (dkt # 86). Defendant argues that none of the documents plaintiff seeks warrant a continuance because any of the BPH decisions and conclusions related to plaintiff's discharge reviews are irrelevant in light of the chronological history of plaintiff's incarceration, the chronology of, which is not in dispute, records plaintiff's parole holds, arrests, parole revocations, reincarceration and subsequent adjustments to his Maximum Controlling Discharge Date (CDD). Defendant's Opposition (Opp.), filed on April 23, 2009 (dkt # 84), pp. 3-4; defendant's Opp., filed on May 7, 2009 (dkt # 87), p. 7. Defendant, apparently no longer plaintiff's parole agent, maintains that she has produced all documents within her possession, custody and control and cannot be compelled to produce documents not in her possession. Defendant's Opp., filed on May 7, 2009 (dkt # 87), pp. 5-6. Defendant also objects to plaintiff's taking issue with the substantive responses defendant provided in response to plaintiff's interrogatories. Dkt # 87, pp. 4-5. Defendant is correct that plaintiff's objection, at dkt # 83 (pp. 2-3), to defendant's statement that the CDC 1515 is not a contract; that Cal. Penal Code § 3000(a) does not dictate a maximum parole period; and that parolees, under Cal. Penal Code §

---

[4] As noted, the court ordered defendant to proceed on a summary judgment motion when the motion to dismiss was vacated, and an answer had not yet been filed. While a discovery order was issued upon the filing of the answer, the court has not found a scheduling order setting forth discovery and dispositive motion deadlines to have been necessary in this instance.

3000(b)(5)(A), may be subject to up to four years of parole supervision, that is, plaintiff's disagreement with the substantive content of the responses is not the basis for a motion to compel. Dkt # 87, p. 5. Nor, in light of the evidently undisputed chronology of plaintiff's holds/arrests, subsequent periods of parole revocation and reincarceration, does a continuance appear to be warranted. Plaintiff's insufficiently supported motions for a continuance and to compel are denied.

Motion for Summary Judgment

Defendant moves for summary judgment on the grounds that plaintiff was placed on a parole hold while he was still subject to parole supervision, thus not violating any constitutional due process or Eighth Amendment right; that even if defendant had violated state law this court lacks jurisdiction to vindicate such a claim; that even if plaintiff has made out a state tort cause of action for false imprisonment, his failure to comply with the California Tort Claims Act bars any such supplemental state law claim; that his claim is barred by Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364 (1994); and that defendant is entitled to qualified immunity. Motion for Summary Judgment (MSJ), 1-13.

*Legal Standard for Motion for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On December 21, 2006 (dkt # 13),[5] the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

*Undisputed Facts*

The following of defendants' undisputed facts are undisputed: 1. Plaintiff claims that defendant Rodriguez placed a parole hold on him on July 12, 2006. 2. Plaintiff claims that the July 12, 2006, parole hold violated his constitutional rights because it occurred after his

---

[5] Defendant also set forth the requirements for opposing the dispositive motion in his notice of the summary judgment motion. See Notice of Motion, filed Feb. 24, 2009 (dkt # 67), pp. 1-3.

initial Controlling Discharge Date (CDD) of April 17, 2005, when he believes he should have discharged from the supervision of the California Department of Corrections and Rehabilitation (CDCR).  3. Plaintiff subsequently was charged with two parole violations which resulted in his return to custody for eight additional months.  4. At the time plaintiff was paroled in April 2002, he was scheduled for discharge from the legal supervision of the CDCR on April 17, 2005.

    The following facts are undisputed because plaintiff does not actually dispute them, simply fails to address them at all, or fails to provide any evidence disputing them (nor, for that matter, to the extent he seeks to proceed on a cross-motion for summary judgment, does plaintiff adequately conform to the requirements of Fed. R. Civ. P. 56, in failing to set forth undisputed facts).[6] 5. Two months after plaintiff was paroled in April 2002, he violated the terms of his parole, was arrested, and his parole was revoked.  Motion for Summary Judgment (MSJ), Declaration (Dec.) of Helen Sakaishi, CDCR Correctional Case Records Analyst, at Exhibit (Exh.) A (plaintiff's chronological history, entry dated 04/17/02), at entry dated 6/17/02.  6. Plaintiff was returned to custody for a total of seven months, and then reinstated on parole on January 13, 2003. (Id. at entry dated 1/13/03.)  7. As a result of his return to custody, plaintiff's CDD was recalculated, adding seven months to account for the period he was incarcerated.  (Id. at entry dated 9/24/02.)  8. Plaintiff's CDD became November 13, 2005. (Id.)  9. On April 22, 2003, approximately three months after being paroled, plaintiff again violated the terms of his parole, was arrested, and his parole was revoked for a second time.  (Id. at entries dated 4/22/03,

---

[6] See plaintiff's motion filed on April 15, 2009 (dkt. # 81), asking for dismissal of the defendant's summary judgment motion, which the court construes as his opposition, rather than a cross-motion for summary judgment and wherein plaintiff asks for judicial notice of documents attached although there are no attached documents.  Plaintiff also asks for summary judgment in his favor in his one-page filing at dkt # 80 (which he also, even more inappositely, identifies as a "12(b)(6) motion to dismiss defendant's summary judgment," but provides no evidentiary basis for any cross-motion, and the court also construes that filing as part of his opposition to the defendant's dispositive motion.  His "motion Fed. R. Civ. P. 56A," also filed on April 15, 2009 (dkt # 82), is also defective as a cross-motion insofar as plaintiff, once again, inter alia, fails to set forth the requisite statement of undisputed material facts. This filing is construed to be part of plaintiff's composite opposition to defendant's summary judgment motion.

12/18/03.) 10. Plaintiff was returned to custody for a total of eight months, and then reinstated on parole on December 18, 2003. (Id.) 11. Plaintiff's CDD again was recalculated to account for the period he was incarcerated, and reached the statutory maximum of April 17, 2006. (Id.)[7] 12. Approximately three months after being paroled on December 18, 2003, on March 23, 2004, plaintiff again violated the terms of his parole, was arrested, and his parole was revoked for a third time. (Id. at entries dated 3/23/04, 11/18/04.) 13. Plaintiff was returned to custody for a total of eight months, and then reinstated on parole on November 18, 2004. (Id.) 14. Because plaintiff's CDD was already at the statutory maximum, it remained April 17, 2006. (Id. at entry dated 5/26/04.) 15. After approximately six months on parole, on May 31, 2005, plaintiff again violated the terms of his parole, was arrested, his parole was revoked, and he was returned to custody for a fourth time. (Id. at entry dated 5/31/05.) 16. The BPH initially calculated plaintiff's parole revocation release date (RRD) for this offense, resulting in a projected parole date of February 25, 2006. (Id. at Exh. C (to Sakaishi Dec., p. 7) and Exh. A, at entry dated 6/13/05.) 17. The BPH, however, later determined that plaintiff would not be eligible for parole until March 27, 2006, and amended plaintiff's projected release date accordingly. (Id. at Exh.A, entry dated 12/14/05.) 18. In July 2005, while still in custody for his fourth parole revocation, plaintiff was tried and sentenced on Case No. CC312020, and received an additional commitment of sixteen months. (Id. at Exh. B [to Sakaishi Dec.] (Abstract of Judgment).) 19. Plaintiff's sentence on the new commitment offense ran concurrently with his original sentence. (Id. at Exh. C, p. 7.) 20. Plaintiff was not paroled under the new commitment offense until March 27, 2006, when his commitment on the original case discharged. (Id. at Exh. A, entry dated 3/27/06.) 21. Plaintiff was subject to parole supervision on the new commitment offense until August 18, 2008. (Id. at Exh. D [to Sakaishi Dec.](Calculation worksheet for CDD).) 22. In July 2006, while plaintiff was still subject to parole supervision under the new commitment offense, the parole hold at

---

[7] And see entries dated 8/04/03, 12/15/03, 5/16/04.

issue was placed. (Id. at Exh. A, entry dated 7/5/06 (showing the July 2006 parole hold), Exh. D (showing plaintiff's August 18, 2008 CDD), and Exh. E (RSTS[8] Case Status Report).)

*Discussion*

Plaintiff's allegation of suffering a parole hold beyond the date scheduled for him to be discharged from parole supervision is construed as one implicating substantive due process. Kelch v. Director, Nevada Dept. of Prisons, 10 F.3d 684, 688-690 (9th Cir. 1993) (noting that order commuting sentence gave rise to liberty interest entitling prisoner to substantive due process, but finding Board's rescission of the commutation did not violate that right).

> Substantive due process requires that government action depriving a person of life, liberty or property have a rational, non-arbitrary connection to a legitimate purpose.

Id. at 688 [internal citations omitted]; McCrorie v. Shimoda, 795 F.2d 780, 786 (9th Cir. 1986) (distinguishing substantive from procedural due process and noting that "[w]hen substantive deprivations of liberty interests are involved, due process is violated at the moment the intentional injury to the interest occurs."[9])

As the first ground of her motion for summary judgment, defendant contends that plaintiff is simply mistaken as to the date from which he was discharged from the legal supervision of the CDCR, notwithstanding that he is correct that his initially scheduled parole discharge date was April 17, 2005. MSJ, p. 5. For his part, plaintiff somewhat confuses the issue by contending, in certain of his opposition filings, that the parole hold date at issue is May 31, 2005, rather than July 12, 2006. Opp., dkt # 70, # 80, # 81. However, in his second amended complaint, upon which this matter proceeds, plaintiff plainly identifies the date of the parole hold

\\\\\

\\\\\

---

[8] Revocation Scheduling and Tracking System.

[9] "By contrast, a procedural due process violation....does not occur until the state deprives the individual of a procedure for redress." Id.

that is the subject of this litigation as July 12, 2006.[10]  In any event, several of plaintiff's own repeated exhibits (Exh. B at dkt # 70, Exh. B-I at dkt # 82, Exh. I at dkt # 86), in opposition are copies of the same Calculation Worksheet for Controlling Discharge Date submitted with defendant's MSJ,[11] which sheet plainly shows that plaintiff was placed on a parole arrest/hold after his initial release on parole on April 17, 2002, first on June 17, 2002, with his parole revoked until January 13, 2003, for a total of 210 days; then on April 22, 2003, with parole revoked December 18, 2003, for a total of 240 days; again on March 23, 2004, with parole revoked until November 18, 2004, for another 240 days, and finally on May 31, 2005, with parole revoked until March 27, 2006, for an additional 300 days.  These periods of parole revocation amounted to 990 days.

Defendant states that California's statutory scheme contemplates three years of parole supervision, but that during such supervision parolees are still within the CDCR's legal custody and can be returned for a parole violation at any time, referencing the statutes and regulations set forth, in whole or in relevant part below, and People v. Contreras, 154 Cal. App.2d 321, 325, 315 P.2d 916 (1957) (prisoner on parole, while "permitted to remain outside prison walls... is still in custody.")  MSJ, p. 5.  Under Cal. Pen. Code § 3057(a), as defendant observes (MSJ, p. 5), each revocation of parole can result in up to one year ("12 months") in prison "in the absence of a new conviction and commitment to prison under other provisions of

---

[10] In an earlier incarnation of this action, when plaintiff was proceeding against three defendants, plaintiff did reference a May 31, 2005, parole hold date. See complaint, filed on March 20, 2006 (dkt # 9).  Upon the granting of defendants' unopposed motion for a more definite statement and the court's separate determination that plaintiff had failed to state a claim, that complaint was dismissed with leave to amend. See Order, filed on July 9, 2007 (# 23).  Two of the defendants were dismissed with prejudice following adjudication of defendants' motion to dismiss plaintiff's subsequent first amended complaint, with leave granted for plaintiff to amend only as to defendant Rodriguez. See Order & Findings and Recommendations, filed on Feb. 28, 2008 (dkt # 37) and Order, filed on March 20, 2008 (dkt # 38), adopting those Findings and Recommendations.  Both in the since-dismissed first amended complaint and the second one upon which this action now proceeds, plaintiff implicated only the July 12, 2006, parole hold date with no reference to May 31, 2005.

[11] See Exh. D to Sakaisha Dec.

law...."

Cal. Pen. Code § 3000(b)(5) states, in relevant part:

Upon successful completion of parole, or at the end of the maximum statutory period of parole specified for the inmate . . . as the case may be, whichever is earlier, the inmate shall be discharged from custody. The date of the maximum statutory period of parole under this subdivision... shall be computed from the date of initial parole and shall be a period chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation.

Section 3000(b)(5)(A):

(A) Except as provided in Section 3064, in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole.

Cal. Pen. Code § 3064 states:

From and after the suspension or revocation of the parole of any prisoner and until his return to custody he is an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be part of his term.

Cal. Code Regs. tit.xv, § 2515(a), in pertinent part:

The board shall discharge a prisoner who has a three-year period of parole within 30 days following one year on continuous parole, unless the board finds good cause to retain the parolee on parole... A parolee has been on continuous parole if he/she has not absconded parole supervision or had parole revoked since initial release on parole. Any time during which the parolee has absconded from supervision while on parole or during a period of revocation shall not be credited to the period of parole.

Plaintiff repeatedly maintains that he had a contract by which the state was bound to discharge him from parole as of April 17, 2005, which the state is withholding, and that the applicable maximum parole period, from his initial release from parole on April 17, 2002, was three years. See, e.g., dkt # 86. Cal. Penal Code § 3001(a) provides in part, inter alia, if a parolee has been on continuous parole for one year and was "not imprisoned for committing a violent felony" under § 667.5(c) for one year, and if he has been committed for such a felony but

12

has been on continuous parole for two years with a three-year maximum parole period:

> the department shall discharge, within 30 days, that person from parole, unless the department recommends to the board that the person be retained on parole and the board, for good cause, determines that the person will be retained.

Of course, this provision is not applicable to plaintiff with his multiple parole violations, but plaintiff argues that in considering additionally Cal. Penal Code § 3064 (see above), Cal. Pen. Code § 3057(b)[12] and CAL. CODE REGS. tit.xv, § 2515(a) (above), that those provisions apply only to § 3001 with regard to continuous parole and the three-year parole period under § 3000 is simply the maximum period for anything other than early discharge for continuous parole. Id., at 3-4. Plaintiff argues that § 3064 only relates, under Cal. Pen.Code § 3001, to early discharge after continuous parole, and does not extend the maximum parole period under § 3000 for any reason other than the parolee being a fugitive or escapee. Id., at 3. Plaintiff appears to mis-read § 3000(b)(5)(A) insofar as it states that a prisoner, subject to a three-year parole discharge date, may not be retained beyond one additional year (or for a total of four years), unless § 3064 applies and he is a fugitive or escapee from parole suspension or revocation, in which case his term will be extended by any such additional period (i.e., whether beyond four years or not). Under Cal. Pen. Code § 3000(b)(1), stating in part, "the inmate shall be released on parole for a period not exceeding three years....," plaintiff argues that only the three-year maximum applies and that under § 3000(b)(5), the three-year statutory maximum does not require a period of continuous parole but only that it is "successful as expired at the end," (dkt # 86, p. 2), by which he apparently means simply the point at which the (initial) maximum date was reached, or possibly that successful completion meant that he was not on that precise date serving time for a parole revocation, notwithstanding his three prior parole revocation terms

---

[12] "Upon completion of confinement pursuant to parole revocation without a new commitment to prison, the inmate shall be released on parole for a period which shall not extend beyond that portion of the maximum statutory period of parole specified by Section 3000 which was unexpired at the time of each revocation."

13

during the initial parole period. Plaintiff does not adequately reconcile that portion of § 3000(b)(5), which states (as set forth above), "[t]ime during which parole is suspended because the prisoner has absconded or *has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation*. [Emphasis added.] Plaintiff does not provide support for his interpretation that somehow none of his parole violations could be applied to extend the three-year maximum at least up to four years.

Defendant avers that the above-noted parole arrest/holds, the occurrence of which plaintiff does not dispute (although plaintiff takes issue with whether the May 31, 2005, parole hold occurred within the applicable parole period), pursuant to state law and regulation, had the effect of extending his parole release date by one year, until April 17, 2006, and that any document, referred to as a CDC 1515 form, is not only not within the defendant's custody, possession or control, but does not constitute a contract; rather, it is essentially a notice of the specific rules governing the conduct of parolees. MSJ, p. 5, Reply, p. 4.

Without calculating the parole revocation period arising from the May 31, 2005, fourth parole/hold, on the face of it the revocation period amounted to 690 days, and in any event the parole period had already been extended by one year, until April 17, 2006, after the second parole revocation period. This is so because the initial period of parole revocation, June 17, 2002, until January 13, 2003, according to plaintiff's chronological history submitted by defendant Rodriguez and authenticated by the Sakaisha declaration, resulted in an extended parole discharge date from April 17, 2005, until November 13, 2005 (MSJ DUF[13] # 5 - # 8 – see above). Plaintiff does not offer any evidence to dispute that the second parole revocation period, from April 22, 2003, until December 18, 2003, had the effect of extending the parole discharge period to the statutory maximum, April 17, 2006. DUF # 8 - # 11. Therefore, this additional

---

[13] Defendant's undisputed fact.

year was evidently reached even prior to the third parole hold, commencing on March 23, 2004. Thus it is that while plaintiff's original parole discharge date was originally scheduled for a year before that, April 17, 2005, it was the conduct of plaintiff himself, as defendant maintains (Reply, p. 4), that had the effect of advancing/extending plaintiff's period of parole, plaintiff's insistent but unsupported claims that defendant was somehow subjected to a binding contract notwithstanding. As to the parole hold/arrest actually at issue in this case, July 12, 2006, plaintiff does not dispute that he was recommitted, on July 5, 2005, while still in custody following the May 31, 2005, parole hold, during the fourth parole revocation period,[14] to prison for a new and separate offense in Case No. CC312020, and was sentenced to a 16-month prison term. This new term evidently ran concurrently with the date upon which plaintiff was to be discharged from the fourth revocation period and the period of parole from the earlier commitment with the maximum parole release date of April 17, 2006. MSJ, Exh. C,p. 7 to Sakaisha Dec. The July 11, 2005, Abstract of Judgment, submitted as Exh. B to the MSJ Sakaisha Dec., shows a July 7, 2005, showing a conviction for one count of a violation of Cal. Penal Code § 290(g)(2), "failing to inform LEA of new address," for which plaintiff was sentenced to a term of one year and four months. Plaintiff does not dispute that this new commitment resulted in a new parole date of August 18, 2005, with a new three-year period of parole and a controlling recalculated discharge date of August 18, 2008, as reflected on the CDD worksheet, dated Feb. 3, 2006. MSJ, Exh. D to Sakaisha Dec.; Opp.,, Exh. B at dkt # 70, dkt # 80, Exh. B-I at dkt # 82, Exh. I at dkt # 86.

\\\\\

---

[14] Defendant notes (DUF # 16 & # 17) that plaintiff's date for release from this fourth parole revocation period was initially determined to be February 25, 2006, but was later determined to be March 27, 2006. See MSJ, Exh. A, Exh. C,p. 7 to Sakaisha Dec. Exh. C, the Board of Prison Terms (now BPH) June, 2005 Summary of Revocation Hearing and Decision (also dated through August, 2005) shows that plaintiff was to be discharged from the prior case as of Feb. 25, 2006 (the case with the maximum parole discharge date of April 17, 2006), to be retained thereafter on the conviction in Case No. CC312020. The BPH evidently later determined that the Feb. 25, 2006 date was a miscalculation and that plaintiff would not be eligible for parole until March 27, 2006, and his projected release date was amended. MSJ, Exh.A to Sakaisha Dec., entry dated 12/14/05.

1         As noted, plaintiff does not challenge the accuracy of defendant's records of his parole violations, the procedures under which he was found to have violated parole or the dates of the periods of revocation (with the exception of his challenge to the appropriateness of the fourth parole hold on May 31, 2005, previously addressed.) He does not dispute that he was subject to a new period parole with regard to a new commitment at the time he was subjected to a parole hold in July of 2006. In fact, as the court has previously noted and as defendant argues (Reply, p. 6), plaintiff submits documentation that demonstrates that the new parole discharge date was August 18, 2008, signifying that plaintiff, far from raising a genuine dispute, appears to have conceded the point.

        Defendant is correct that plaintiff is simply mistaken as to when he was discharged from parole. MSJ, pp. 1-2. Plaintiff fails to take into account events subsequent to the initial calculation of his original parole date and to factor in the new parole period arising from his July 2005, sentencing with regard to the July 12, 2006 parole hold (for which the parole discharge date was August 18, 2008) (as well as failing to factor in the recalculated parole release date with regard to his allegations vis-à-vis the earlier May 31, 2005 holf – for which underlying commitment the parole discharge date had advanced to April 17, 2006). The July, 2006 parole hold occurred within the parole period for the July, 2005 conviction. Thus, the July 12, 2006, parole hold could not have violated plaintiff's due process rights or resulted in any other violation of plaintiff's federal constitutional rights, plaintiff having failed to demonstrate that the parole arrest at issue even violated state law.

        In light of the applicable state law, of which application plaintiff simply appears to be mistaken, plaintiff does not raise a genuine issue in dispute with regard to any substantive due process violation. The court need not reach defendant's further grounds. Defendant's motion for summary judgment should be granted.

\\\\\

\\\\\

Accordingly, IT IS ORDERED that:

1. Plaintiff's March 3, 2009 (dkt # 70) motion and objections; his April 15, 2009 (dkt #79), request for a continuance; his April 21, 2009 (dkt # 83), motion for a continuance and motion to compel in response to the court's order, filed on April 8, 2009 (dkt # 78); and his motion again seeking a continuance, filed on May 1, 2009 (dkt # 86), are denied (with the objections overruled);

2. Plaintiff's inapposite request, filed on April 15, 2009 (dkt # 82), for the court to order defendant to comply with the court's order, filed on January 26, 2009 (dkt # 64), is denied.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment, filed on February 24, 2009 (dkt # 67), be granted and judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 08/18/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:009
hunt0141.msj

17